# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **WYNALDA LITHO, INC.** d/b/a<br>**WYNALDA PACKAGING**,<br>a Michigan domestic profit corporation,<br>8221 Graphic Drive<br>Belmont, MI 49306<br><br>and<br><br>**WYNALDA INTERNATIONAL, LLC** d/b/a<br>**WYNALDA INTERNATIONAL,**<br>a Michigan limited liability company,<br>420 Nine Mile Road<br>Comstock Park, MI 49321<br><br>and<br><br>**WYNALDA FARMS, LLC,**<br>a Michigan limited liability company,<br>420 Nine Mile Road<br>Comstock Park, MI 49321<br><br>and<br><br>**ROBERT M. WYNALDA, JR.,**<br>an individual,<br>420 Nine Mile Road<br>Comstock Park, MI 49321<br><br>and<br><br>**ROBERT M. WYNALDA, JR. TRUST,**<br>420 Nine Mile Road<br>Comstock Park, MI 49321<br><br>and<br><br>**CONNIE A. WYNALDA TRUST,**<br>420 Nine Mile Road<br>Comstock Park, MI 49321<br><br>    Plaintiffs,<br><br>v. | Docket No. _____<br><br>Hon. _____ |

| | |
|---|---|
| **SYLVIA BURWELL**, in her official capacity as Secretary of the United States Department of Health and Human Services, 200 Independence Avenue, S.W. Washington, D.C. 20201 | ) ) ) ) ) ) |
| and | ) ) |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**, 200 Independence Avenue, S.W. Washington, D.C. 20201 | ) ) ) ) ) ) |
| and | ) ) |
| **THOMAS PEREZ**, in his official capacity as Secretary of the United States Department of Labor, 200 Constitution Avenue, N.W. Washington, D.C. 20201 | ) ) ) ) ) ) |
| and | ) ) |
| **UNITED STATES DEPARTMENT OF LABOR**, 200 Constitution Avenue, N.W. Washington, D.C. 20201 | ) ) ) ) ) |
| and | ) ) |
| **JACOB LEW**, in his official capacity as Secretary of the United States Department of the Treasury, 1500 Pennsylvania Avenue, N.W. Washington, D.C. 20220 | ) ) ) ) ) ) |
| and | ) ) |
| **UNITED STATES DEPARTMENT OF THE TREASURY**, 1500 Pennsylvania Avenue, N.W. Washington, D.C. 20220 | ) ) ) ) ) ) |
| Defendants. | ) ) |

## VERIFIED COMPLAINT

Plaintiffs, by and through their attorneys, for their Verified Complaint state:

## NATURE OF THE CASE

1. This case is about religious freedom. In this action, Plaintiffs seek declaratory and injunctive relief for the Defendants' violations of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA") caused by the actions of the Defendants in implementing the Patient Protection and Affordable Care Act, Pub. L. 111-148, March 23, 2010, 124 Stat. 1029, and the Health Care and Education Reconciliation Act, Pub. L. 111-152, March 30, 2010, 124 Stat. 1029, (collectively, the "Affordable Care Act") in ways that force Plaintiffs to violate their deeply held religious beliefs.

2. The United State Supreme Court recently held, in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751; 189 L. Ed. 2d 675; 573 U.S. ___ (2014) (*Hobby Lobby*), that RFRA applies to closely held for-profit corporations such as Plaintiff Wynalda Litho, Inc. d/b/a Wynalda Packaging ("Wynalda Packaging"), Plaintiff Wynalda International, LLC d/b/a Wynalda International ("Wynalda International"), and Plaintiff Wynalda Farms, LLC ("Wynalda Farms," collectively "the Wynalda Companies").

3. In light of *Hobby Lobby*, the application of the HHS mandate, as defined below in ¶ 35, to Plaintiffs is clearly in violation of RFRA.

## PARTIES

4. Plaintiff Robert M. Wynalda, Jr. and Connie A. Wynalda (collectively "the Wynaldas") are married individuals residing in Comstock Park, Michigan.

5. Mr. Wynalda is the president and sole shareholder of Wynalda Packaging. Mr. Wynalda is also the trustee of Plaintiff Robert M. Wynalda, Jr. Trust, dated June 1, 1993, as amended, which is a 50% shareholder of Wynalda International and Wynalda Farms.

6. Mrs. Wynalda is the trustee of Plaintiff Connie A. Wynalda Trust, dated June 1, 1993, as amended, which is a 50% shareholder of Wynalda International and Wynalda Farms.

7. Plaintiff Wynalda Packaging is a closely-held Michigan domestic profit corporation in good standing. It specializes in packaging design, printing, die-cutting, foil stamping, and specialty custom printing. It is headquartered in Belmont, Michigan. It has approximately 140 employees. Neither Wynalda Packaging's articles of incorporation nor the Michigan Business Corporation Act prohibits Wynalda Packaging from exercising religion.

8. Plaintiff Wynalda International is a closely-held Michigan limited liability company. It is an affiliate of Wynalda Packaging and will have approximately 4 employees in 2015. Neither Wynalda International's articles of incorporation nor the Michigan Business Corporation Act prohibits Wynalda International from exercising religion.

9. Plaintiff Wynalda Farms is a closely-held Michigan limited liability company. It is an affiliate of Wynalda Packaging and will have approximately 1 employee in 2015. Neither Wynalda Farms' articles of incorporation nor the Michigan Business Corporation Act prohibits Wynalda Farms from exercising religion.

10. Defendants are appointed officials of the United States government and United States executive branch agencies responsible for issuing and enforcing the HHS Mandate.

11. Defendant Sylvia Burwell is the Secretary of the United States Department of Health and Human Services ("HHS"). In that capacity she is responsible for the operation and management of HHS. Burwell is sued solely in her official capacity.

12. Defendant HHS is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

13. Defendant Thomas Perez is the Secretary of the United States Department of Labor ("DOL"). In that capacity, he is responsible for the operation and management of DOL. Perez is sued solely in his official capacity.

14. Defendant DOL is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

15. Defendant Jacob Lew is the Secretary of the United States Department of the Treasury ("Treasury"). In that capacity, he is responsible for the operation and management of Treasury. Lew is sued solely in his official capacity.

16. Defendant Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

## JURISDICTION AND VENUE

17. This action arises under the laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361; jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §2000bb-1, 5(c), 5 U.S.C. §702, and Fed. R. Civ. P. 65; and authority to award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and 42 U.S.C. § 1988.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e). A substantial part of the events or omissions giving rise to this Verified Complaint occurred in this district and all of the Defendants are domiciled and/or have a principal place of business in this district.

## FACTUAL ALLEGATIONS

Case 1:14-cv-02078 Document 2 Filed 12/10/14 Page 6 of 14

Wynalda Packaging et al. v. Burwell et al.
Verified Complaint                                                                                                    Page 6

19. Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

### **Plaintiffs' Religious Beliefs**

20. The Wynaldas are believing and practicing Christians who are deeply involved in ministry. Both believe that the Holy Bible is the inspired, inerrant Word of God and that the Holy Bible instructs that human life begins at conception, that such life is created in God's image, that God mandates respect for the sanctity of each human life, and that abortion and abortion-inducing drugs, as defined below in ¶ 29, result in the wrongful and immoral taking of human life.

21. Mr. Wynalda graduated from seminary, has published several books on Christian themes, and serves on the board of a Christian college.

22. One of the religious and moral teachings that the Wynaldas embrace, based on the Holy Bible, is that a preborn child is, from the moment of conception, i.e., a fertilized human embryo, a human being created in the image of God. See, e.g., Ps. 51:5, 139:13; Luke 1:41-44; 18:15; 2 Tim. 3:15.

23. Based on these religious and moral teachings, the Wynaldas believe that the termination or destruction of the life of a preborn child by, among other ways, abortion-inducing drugs is an intrinsic evil and a sin against God. Therefore, abortion and abortion-inducing drugs that may terminate or destroy the life of fertilized embryo are morally wrong and objectionable to the Wynaldas.

24. The Wynaldas in their individual capacities and through their trusts, as explained above, are all of the shareholders of the Wynalda Companies. As such, the Wynaldas are responsible for the management and operation of the Wynalda Companies. The Wynaldas

seek to conduct the business operation of the Wynalda Companies with integrity, in compliance with their pro-life beliefs, and in a manner that honors God. The Wynaldas exercise their religious faith as Christians living in the world by, among other things, operating the Wynalda Companies. They do not believe that their faith ends upon entry into the market, nor do they believe that business, commerce, or profitability are in conflict with their faith.

25. Consequently, the Wynaldas believe it would be immoral and sinful for the Wynalda Companies to be required to participate in, pay for, facilitate, or otherwise support abortion-inducing drugs. Requiring them to do so would substantially burden their exercise of religion.

26. The Wynalda Companies are operated in accordance with the faith of the Wynaldas. They too serve God and exercise the religion of the Wynaldas.

## **Plaintiffs' Health Insurance Plan**

27. Plaintiffs have demonstrated their sincerely held religious beliefs by, among other things, making contributions in support of Christian charitable works, including organizations that support and affirm the lives of unborn children. As part of fulfilling their beliefs, the Plaintiffs, through Wynalda Packaging provide generous self-insured coverage for their employees and their dependents.

28. Wynalda Packaging is the plan's sponsor and plan administrator. Wynalda International and Wynalda Farms are participating related employers.

29. Plaintiffs have always maintained objections to supporting either directly or indirectly the use of any drugs, devices, or procedures intended for the purposes of inducing or effecting an abortion or otherwise killing a human embryo (collectively "abortion-inducing drugs") on the basis of their sincerely-held religious beliefs.

30. Accordingly, Plaintiffs have always precluded abortion-inducing drugs from their insurance plan.

31. Approximately 110 employees of the Wynalda Companies and their dependents participate in this insurance plan.

32. The plan year for Wynalda Packaging's insurance plan is renewed on January 1 of each year.

## The Affordable Care Act and the HHS Mandate

33. Under the Affordable Care Act, employers with over 50 full-time employees are required to provide a certain minimum level of health insurance to their employees.

34. With significant exceptions, all group health plans and health insurance issuers that offer non-grandfathered health insurance must provide coverage for certain preventive services without cost-sharing. 42 U.S.C. § 300gg-13.

35. These services have been defined by the Health Resources and Services Administration ("HRSA") to include "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines/ (the "HHS Mandate").

36. Included in the category of "Food and Drug Administration approved contraceptives" are several drugs that may cause the demise of an already-conceived but not-yet-implanted human embryo, such as "emergency contraception" or "Plan B" drugs – the so-called "morning after pill" – and "Ella" – the so-called "week after pill" – which studies show can

Case 1:14-cv-02078 Document 2 Filed 12/10/14 Page 9 of 14

Wynalda Packaging et al. v. Burwell et al.
Verified Complaint
Page 9

function to kill human embryos even after they have implanted in the uterus by a mechanism similar to the abortion drug RU-486.

37. The manufacturers of these abortion-inducing drugs indicate on product labeling that these drugs can function to cause the demise of human embryos.

38. Due to changes in Plaintiffs' plan, it will lose its grandfathered status on January 1, 2015 and Plaintiffs will be required to provide these services to their employees beginning on that date.

39. On February 15, 2012, Defendants issued final rules through HHS, Labor, and Treasury, entitled "Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventative Services Under the Patient Protection and Affordable Care Act," 77 Fed. Reg. 8725-30. Those rules, coupled with Plaintiffs' loss of grandfathered status, force Plaintiffs to pay for and otherwise facilitate the use of abortion-inducing drugs.

40. Although some nonprofit corporations have the option to opt out of the HHS Mandate in certain respects, that option is not open to for-profit corporations, such as the Wynalda Companies.

41. The HHS Mandate makes no allowance for the exercise of religion of individuals and the for-profit corporations they own and operate, including Plaintiffs, when such individuals and corporations object, on the basis of sincerely held religious beliefs, to paying for or providing insurance coverage for abortion-inducing drugs.

42. A for-profit corporation cannot freely avoid the HHS Mandate by simply refusing to provide health insurance to its employees because the Affordable Care Act imposes significant monetary penalties for refusal.

43. The exact magnitude of these penalties may vary according to the complicated provisions of the Affordable Care Act, but the fine is approximately $2,000 per employee per year, i.e. more than $200,000 per year in potential fines to the Wynalda Companies.

44. Further, the Affordable Care Act also imposes monetary penalties if Plaintiffs were to continue to provide health insurance to their employees but omit abortion-inducing drugs from the plan.

45. The exact magnitude of these penalties may also vary according to the complicated provisions of the Affordable Care Act, but the fine is approximately $100 per day per employee with minimum amounts applying in different circumstances, i.e., more than $4 million per year in potential fines to the Wynalda Companies.

46. The imposition of such fines would severely harm the Wynalda Companies and may even drive them out of business.

47. If Plaintiffs do not submit to the HHS Mandate, they also trigger a range of enforcement mechanisms, including but not limited to civil actions by the Secretary of Labor or by plan participants or beneficiaries, which would include, among other things, relief in the form of judicial orders mandating that Plaintiffs violate their sincerely held religious beliefs and provide coverage for abortion-inducing drugs to which they religiously object.

48. Absent injunctive relief from this Court, the HHS Mandate by its terms will force Plaintiffs to obtain and pay for insurance coverage of abortion-inducing drugs in their January 1, 2015 insurance plan, thereby coercing Plaintiffs to violate their sincerely held religious beliefs or face heavy fines and penalties.

49. Plaintiffs have no adequate remedy at law.

50. Defendants' coercion tramples on the freedom of conscience of Plaintiffs and of millions of other Americans who seek to abide by their religious convictions in their lives and in their business, to comply with moral imperatives decreed by God and to participate in the public square through their businesses and other activities in a way that is consistent with their sincerely held religious beliefs and the ethical imperatives decreed by God.

### The Supreme Court's Ruling in *Burwell v. Hobby Lobby*

51. On June 30, 2014, the United State Supreme Court decided *Hobby Lobby*. There, the Supreme Court concluded that the HHS Mandate, as applied to closely-held, for-profit corporations violates RFRA and is, therefore, unlawful. *Id.* at 2759-60, 2785 ("The contraceptive mandate, as applied to closely held corporations, violates RFRA.")

52. As closely-held non-profit corporations and their owners with sincerely held religious objections to the HHS mandate, Plaintiffs are identically situated to the plaintiffs in *Hobby Lobby*.

### FIRST CLAIM FOR RELIEF
### (Violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb)

53. Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

54. Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortion-inducing drugs.

55. As explained in *Hobby Lobby,* RFRA applies to for-profit closely held corporations, such as the Wynalda Companies.

56. When Plaintiffs choose not to provide coverage for abortion-inducing drugs, they are exercising their sincerely held religious beliefs within the meaning of RFRA.

57. The HHS Mandate imposes a substantial burden on Plaintiffs' religious exercise and coerces them to violate their sincerely held religious beliefs.

58. The HHS Mandate chills Plaintiffs' religious exercise.

59. The HHS Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise if they fail or refuse to comply with the HHS Mandate.

60. The HHS Mandate furthers no compelling governmental interest and is not narrowly tailored to any compelling governmental interest.

61. The HHS Mandate is not the least restrictive means of furthering Defendants' stated interests as required by RFRA. See *Hobby Lobby*, 134 S. Ct. at 2780 ("HHS has not shown that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion . . . .").

62. The HHS Mandate, as applied to Plaintiffs, violates RFRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A. That this Court enter a judgment declaring that the HHS Mandate and its application to Plaintiffs to be a violation of RFRA and, therefore, invalid in any way applicable to them;

B. That this Court order injunctive relief, prohibiting Defendants from applying the HHS Mandate to Plaintiffs in a way that substantially burdens the religious beliefs of Plaintiffs in violation of RFRA and prohibiting Defendants from requiring Plaintiffs to provide health insurance coverage for abortion-inducing drugs, specifically Plan B and other so-called "morning after pills" and Ella and other so-called "week after pills";

    C. That this Court award Plaintiffs their court costs and reasonable attorney's fees, as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412, and 42 U.S.C. § 1988, or other applicable law; and

    D. That this Court grant such other and further relief as may be just and proper.

                      Respectfully submitted,

Dated: December 10, 2014      /s/ *John R. Garza*
                      John R. Garza (D.C. Bar No. 398728)
                      The Garza Law Firm, P.A.
                      17 W. Jefferson Street
                      Rockville, MD 20850
                      (301) 340-8200
                      (301) 761-4309 fax
                      jgarza@garzanet.com

                      Patrick M. Jaicomo
                      (Michigan Bar No. P75705)
                      *Admission Pro Hac Vice Pending*
                      D. Andrew Portinga
                      (Michigan Bar No. P55804)
                      *Admission Pro Hac Vice Pending*
                      Miller Johnson
                      250 Monroe Avenue N.W., Suite 800
                      Grand Rapids, MI 49503
                      (616) 831-1782
                      (616) 988-1782 fax
                      jaicomop@millerjohnson.com
                      portingaa@millerjohnson.com

## VERIFICATION OF COMPLAINT

I, Robert M. Wynalda, Jr., verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge, and belief. Executed on December 8, 2014.

_____
Robert M. Wynalda, Jr.

STATE OF MICHIGAN      )
                       )
COUNTY OF Kent         )

Subscribed and sworn to before me this 8th day of December, 2014 by Robert M. Wynalda, Jr.

_____
Cheryl A. Sopcak
Cheryl A. Sopcak, Notary Public
Kent County, Michigan
Acting in Kent County, Michigan
My Commission Expires: 9-13-2019